Next case is Bannon v. United States and Dismas Charities, 2009, about 50-64, Mr. Gordon. Before you begin, Mr. Gordon, and please don't stop the clock yet, are you familiar with our practice notes, particularly the one in Rule 28 relating to confidential material? Yes, I am, Your Honor. Which says, unnecessarily designating material in the briefs and appendix as confidential may hinder the court's preparation and issuance of opinions, including discussion in an open courtroom. Counsel must be prepared to justify at all argument any claim of confidentiality. We have an opinion from the agency where everything from start to finish is labeled confidential. We have a brief from you where all sorts of common words are labeled as confidential. What is really confidential here? The confidentiality was not just a function of my own choosing, it was also a function of the choosing of the parties. The agency protected everything that was internal to them in terms of their evaluation. I tried to protect everything that was in my proposal, I tried to protect past performance information, and at a certain point it becomes very difficult to start parsing out specific words out of an entire document. The name of the Texas City? That particular name of the Texas City is now public because of decisions made by lower court, but we were trying to protect it because it is not publicly available information. It only became available as a result of its use by the government of protest. Awards, legal responsibility, broke on real estate agent, I mean just common words. The real estate agent I think were designations by the other side because they had to do with things in their proposal, and this is a procurement. It is a very difficult thing to try to figure out what exactly is, they may be common, but they are part of the proposal. Can we ignore these designations of confidentiality? The difficulty is in having a public hearing after the case is over, then it is much easier to do, but when there is a public hearing, it is very difficult. I apologize, some of the words that are in there, some of the statements that are in the evaluation, I would very much like to use in my argument, but I seem to be prohibited. Why don't you proceed? Okay, I understand. May it please the court. This case involves a default termination involving unique circumstances in which a contractor, my client, was unable to open a facility and begin performance of the contract. That contract and its performance can have no relevance to the future performance where the contractor is in an incumbent facility and is successfully performing. There is simply no basis to have a serious risk that the contractor will have the same inability to begin performance. Well, there was a previous default. Yes, it was. And that is relevant to the award of a future contract, isn't it? I think not, not unless the specific circumstances of that default act as a predictor to future performance because if the default involves things that can't recur, it has no future applicability, as in a facility that is unable to open being relevant to a facility that is already open, a facility that needs no permits in order to go forward and perform renovations versus one where permits were needed. But isn't it somewhat indicative of your abilities that you could not acquire those zoning permits and you could not proceed? The contracting officer found that the management of the permit process was the specific circumstance which she found relevant to the future prediction of this contract at Montgomery. The problem with that is the contracting officer admitted in testimony that she had no knowledge or no evidence that permits were actually needed. That's an arbitrary finding. So if you can't, you say, well, there were permits needed before. But there seems to have been an inability to correct a myriad of deficiencies in the pre-inspection. That was something that the contracting officer did not cite as a reason for finding this contract relevant and have an impact on future performance. And those myriad of deficiencies were almost entirely due to the fact that work was stopped because there was not a permit. So really you have circumstances that can't recur in the new contract. I would go farther than that, and I would say that the performance can't be considered as a matter of law because the RFP specifically excluded performance involving facility. No one disputes that. The argument from the Court of Federal Claims was a default affects all factors. But that's not the way the RFP worked. The RFP said here are the five sub-factors that we are going to consider, only those five. And one of those that they excluded was the factor that's in the contractor evaluation form and in the technical evaluation that deals with facility issues. Let's come back to it. This contract requires you to perform the identical services you would have been required to perform at Austin, and the same management staff would have had the responsibility of delivering the same services they could not deliver at Austin. Why, again, isn't that relevant? Because the RFP has excluded an area of performance, whether that performance is good or whether that performance was bad. If you were the greatest contractor in the world in facilities, that performance will be excluded from their past performance evaluation, and equally so with bad performance. But risk assessment could certainly be considered, right? There's no risk assessment. There's a risk here. The same contract couldn't be performed by the same people. Maybe that's a risk. But the risk isn't suspended in the middle of reality. The risk is specifically tied to facility issues. Those issues are excluded. We may not think it's a good idea. It may be a blind eye. I'm not really following you. What is excluded? I mean, the criteria that we used included past performance and risk assessment, right? So what are you saying? Where do we decide what we include and what we don't include? Okay. In past performance, there were five subfactors. There was no risk assessment subfactor. There was five factors that were evaluated to determine confidence. That did not include site validity and suitability, which is the factor in which you have facility issues. It did not include a facility factor, which is where you include facility issues, or a risk assessment. All those three factors were in the technical management evaluation, where management was given low risk. But in this RFP, the agency for whatever reason... And that's where you were deficient. And that's where you're deficient. Isn't it reasonable that they perhaps evaluated this all in that category? They didn't evaluate it in the technical management category. The compliance function even directed them not to evaluate that in the technical category because it's past performance. And this was excluded past performance. The agency's reasoning for it has never been explained in any of the litigation going forward. But the federal law is you have to evaluate in accordance with factors you state. I'm having the same difficulty that Judge Prost is. You're making certain boxes and excluding things from it that I don't see when I look at this sort selection authority decision. It lists risk assessment. It lists past performance. It lists past performance. It lists all of these things. That may be the source selection decision, ignoring the RFP, because when you look at the RFP, it's very clear. If you look at 102.2.5 and 6, you will see the factors listed there. One of the factors that's not listed there is facility or site suitability and availability, which involve all the issues that occurred in Austin. You will find them in the technical management evaluation on 102.2.6 and 102.2.7. Is this an argument you pressed with the Court of Claims? Absolutely. So where is the Court of Claims? We're on the Court of Claims' opinion. The Court of Claims' opinion. Just to continue and analyze that argument. The Court of Claims basically, in my view, violated OMV Medical because in OMV Medical it says you have to evaluate and review the rationale of the agency. In this case, what happened was the Court of Federal Claims actually went to its own rationale and it said, don't look at the facts and circumstances, only look at the default and say the default as a whole suggests management shortcomings. Then it said a default is relevant to all the past performance factors because you never begin performance in any of them. The problem with that is a default or not a default. It's the specific performance that the contracting officer looked at, the management of renovations. She said your actions in the management of renovations are what's causing me to feel serious concerns. And that is facility performance. That is performance that is specifically not included in the RFP. I'm not discussing that. I'm looking at the RFP and I've got the risk assessment area. It says a separate proposal risk assessment and rating may be applied to all evaluation criteria. All. So all evaluation criteria get a risk assessment. I'm looking at page 10227, the joint appendix. That's the RFP and it's the risk assessment area. Since this risk assessment area, if you take a look at 13483, this is the Bureau of Prisons' own compliance evaluation, they make it very clear that this risk assessment does not include past performance. It's separate. Wait, 13483. It says increasing the risk factor may not have any relation to the risk assessment area, and which appears to apply only to the officer's ability to perform the effort described in their technical management proposal. So it's a separate technical management factor, not past performance. The next issue is Dismiss's past performance. And it's related to this because Dismiss's past performance involved community relations. That's what we attacked. We said the contracting officer never evaluated that. In fact, she had no knowledge of it. She admitted she knew nothing about the actual community relations aspect of it. All she knew was the zoning and permits no longer presented a risk. But again, zoning and permits are something that are not part of the past performance evaluation. Wait, so is your view on that that they should have rated them lower, that they shouldn't have considered the entire factor at all? They should not have considered anything having to do with facilities, zoning and permits. And the reason for that is because the BOP did it to itself. It wrote it in its own solicitation. So what is left of past performance then? What's left of past performance are five factors, accountability, programs, facility, personnel. Those are the factors. It does not include facility. You just listed facility as one of the factors, I thought. I thought you just listed facility. In the technical management evaluation, there is a facility factor. Technical management deals with the proposal, not past performance. It's very curious, but it is what they have, and they do enforce it, performance being good or bad. The site location evaluation, there are letters that were submitted that are supposed to show a positive and affirmative relationship with the community. The SSEB, for some reason, said, your letters come from a specific element of the community that doesn't count. Well, the statement of work shows that that specific element of the community is highly important to the successful operation of the Bureau of Prisons Community Correctional Centers. Mr. Gordon, you're well into your rebuttal time. Oh, excuse me. You can save it or use it. It's up to you. Okay. I'm going to reserve the rest of my time. Thank you, Your Honor. I didn't see a light go on. The time is up. Oh, okay. Ms. Sanchez. May it please the Court. The trial court took into consideration all of Mr. Gordon's arguments presented on behalf of Bannon. Can you help us with this discussion we were having about the risk assessment? Judge Prost and I were inquiring as to whether you could include the whole Austin contract under a risk assessment. I read to Mr. Gordon a part of the RFP that says the risk assessment goes to all evaluation criteria. And he read back to me something on 13483 that seemed to limit it. Can you clarify that? Yes. The risk assessment component is embedded into the technical management evaluation. And that's how the contracting officer and the source selection team applied it. But what is called a risk assessment for the past performance evaluation is at page 10.225 of the joint appendix. Page 10.225. That's where I was almost. Yeah? Page 10.225. The government specifically, the Bureau of Prisons specifically, disclosed to the offerors that the government's confidence in the offeror's probability of successfully performing the effort as proposed based on their record of performance in current and past relevant contracts would be taken into consideration. And that's exactly what the contracting officer did as required by the FAR. Section 15.304 of the FAR specifically requires a contracting officer to take into, sorry, it's section 15.305A2, Roman numeral II of the FAR, requires the government to consider past performance information submitted by offerors. And why did you give them a blue rating? They got a blue rating, but it was a decreased blue rating. It was on the lower end of the blue rating. I don't see a minus beside the blue. It's in the source selection evaluation. It's not a numerical formula, Your Honor. It's a very subjective evaluation. And that's how the contracting officer approached it. She expressed that. Light blue, Carolina blue. Dark blue. On the low end of the blue rating. Makes it a little tough to evaluate, doesn't it? It is a difficult, it was a very difficult evaluation for this contracting officer. I mean, he has a point. You give him a blue, he expects that he's, what more does he need to improve? He's gotten the highest rating. But it's a qualified. Well, I thought you downgraded it to a green. No? I'm sorry? Did you, was that blue not downgraded to green? It wasn't downgraded to green in the evaluation. The contracting officer awarded them a blue. Does the solicitation allow for light blue? Blue minus? No. The solicitation. Blue green? The solicitation has four categories. Blue, green, red, and yellow. But the contracting officer does have discretion under section 15.305 of the FAR to take into consideration the past performance and to determine the relevance of that past performance. It's required. It's not even discretionary. So she complied with the FAR, and she complied with the four corners of the solicitation requiring her to evaluate past performance. Then rate them green. Then we wouldn't be here, would we? I, probably we would still be here. No. Because in that case they would be arguing that they were entitled to a full blown blue. So, but it's, did she have the discretion to go down to a green? She probably did, but she chose not to. And there's nothing unreasonable, irrational, or unlawful about that. She qualified the rating and took it into consideration in the best value tradeoff analysis. Banham, in its proposal, stated that its final proposed, that its Montgomery facility would require substantial renovations. And the pre-site inspections that the government conducted confirmed this. Therefore, it is relevant, what happened in Austin is relevant to what happened in Montgomery, to the Montgomery procurement. Because the contracting officer relied on Banham's representations that its facility needed a lot of work beyond cosmetic upgrades. There is no evidence in the record or any indication that permits were required. But Banham wasn't even at that point. They hadn't started the renovation process. But that's not dispositive of the situation. The conclusion by the contracting officer that Banham's actions in the Austin contract demonstrated a lack of management ability in the renovation process is in the source selection decision. And that is what the trial court relied upon in deciding the case. The trial court did not invent its own rationale or reach its own rationale. It simply looked at the rationale that the contracting officer reached and used and determined that it was reasonable for the contracting officer to have approached the evaluation in that way. So concerning its past performance evaluation, Banham has not demonstrated that the contracting officer acted inconsistent with the FAR or outside the scope of the solicitation. With respect to the evaluation of Dismiss' past performance, the Bureau of Prisons exercised its judgment that Dismiss had added to the evaluation adequately and appropriately resolved its differences with the city of Montgomery. Banham proposes that the Bureau of Prisons should have punished Dismiss for seeking legal action to resolve a conflict with the city. But that's simply asking the court to substitute its judgment for that of the Bureau. And that's not sufficient to disturb the award to Dismiss. And concerning the management and technical evaluations, Banham has not demonstrated or even attempted to demonstrate how its proposal exceeded the requirements of the solicitation. To receive a blue rating, an offeror's proposal must meet and exceed the requirements of the solicitation. And Banham has not even tried to do that. It simply asserts that its proposal deserved blue ratings because it disagrees with the conclusions of the source selection team and the best value analysis conducted by the contracting officer. But it hasn't demonstrated that the contracting officer or the source selection team acted separate and apart from what was required by the solicitation, that it acted inconsistent with the terms of the solicitation. And concerning the issue in the administrative record, about the supplementation to the administrative record, the trial court ruled on the parameters of the administrative record. And none of the documents that Banham cites that are outside the scope of the administrative record are within the parameters of what properly make up the administrative record. So on that basis, our motion to strike the administrative record, that the outside documents should be granted. And if the court has any questions? Apparently not. Thank you, Ms. Sanchez. Mr. Hertzfeld has a little time representing Dismiss. Thank you, Your Honor. May it please the court. Dismiss Charities joins the government respectfully requesting that this court affirm the judgment of the Court of Federal Claims. We submit that Judge Weiss got it right. This is a procurement that GAO and the Court of Federal Claims have effectively overseen for two years and ultimately concluded was reasonable.  and only started performing it in February 1st of this year and is now currently performing it. To pick up on the termination for default conversations and to respond a little bit to Banham and add a little bit to what the government has said, again, to reiterate, 48 CFR Section 15305A2, Romanette 2, gives discretion to the contracting officer to determine the relevancy and requires the contracting officer that it shall consider information obtained from other sources, and that includes other contracts, including ones that are terminated for default. The RFP specifically defines what is relevant, and at page joint appendix 10191, it defines relevant contract as those that are similar in size, scope, and complexity. And the termination for defaulted contract involved a contract with the same agency, the same branch, the same agency, the Bureau of Prisons, the Community Corrections Branch, for essentially the same services, for halfway house services. And it was a similar type of major use facility of greater than 31 inmates. It had approximately the same value of money. We would submit that it was, in fact, of similar size, scope, and complexity. And if you look at the source selection decision, the source selection authority, in fact, said that they were similar and made that finding, and that is at joint appendix 11533. As to the question as to whether or not there were similar circumstances, even assuming there wasn't this relevancy criteria in the RFP, we would submit that, as Judge Rager mentioned, a myriad of defects shows a distinct similarity as between what happened in the contract that was terminated for default and what happened here. As for the question as to whether or not facility could be discussed or evaluated as part of this procurement, we would point the court to the RFP itself states that the past performance proposal should include discussion of the offers, quote, meeting mandated facility operational availability schedules, unquote. And that's at joint appendix 10192. Again, that is what you were supposed to submit as part of the past performance proposal. Furthermore, there's no question that Bannon wasn't prejudiced here. It was given the opportunity in discussions to respond to the termination for default. So it was given an opportunity in this procurement to respond to why it didn't think it was appropriate to consider that. As to the propriety of the Bureau of Prisons past performance evaluation of my client, Dismas, again, Dismas solved a problem where in some circumstances Bannon didn't. It should be noted that in the record you will see that not only did Dismas fall prey to the problems of zoning with the city, but Bannon also couldn't use the original facility it wanted to use in this procurement because of that. You can find that at joint appendix page 11111. We also join with the government in believing what the parameters were, that Judge Weiss set the parameters for the administrative record and believe that certain documents, including the declaration at pages 20000 and 20001, should not be in. As to the technical management areas, we again, with the government, we believe that the Court of Federal Claims got it right, that the Bureau of Prisons should exercise discretion, and it gets into, as this Court said, an E.W. Bliss decision. It gets into the minutia of the ratings and, in some cases, sub-ratings, whether there's a strength or a substantial strength. We also believe that there's no evidence of bad faith, much less a clear and convincing evidence required, and we don't believe that Bannon has shown any prejudice here as well. If the Court has no questions, for the reasons stated in our brief and the government's brief, we would respectfully request the Court of Federal Claims judgment be affirmed. Thank you, Mr. Fitzgerald. Mr. Gordon has a few minutes of rebuttal. Thank you, Your Honor. The government's explanation for the RFP points to 10225 of the record. 10225 says specifically that the past performance evaluation will be accomplished by reviewing aspects of an offeror's relevant present and past performance, focusing on and targeting performance that is relevant to the past performance factors outlined below. So this RFP is saying what gets evaluated, not the FAR and not anything that's in generalities. The government has not explained why they have the FAR the way they do, and it is what it is, good or bad. The Dismissive brought up this operational availability information that gets presented to the government. The government also gets contractor evaluation forms that include a separate section that involves facility performance. Receiving the information doesn't mean it gets evaluated, because they say specifically here it doesn't. So really the issue here in terms of evaluation of Austin and of all the things that happen there have to do specifically with only the factors they've listed. Everything else goes into the technical management evaluation. In terms of Dismissive's past performance, we're not asking the court to substitute judgment. We're saying no judgment was ever exercised because the contracting officer was unaware of the community relations past performance. I would have to say in terms of the other evaluation of the accountability factor, that we were downgraded in conflict with our proposal and with the statement of work. This wasn't just talking about substituting judgment. You have to read what someone said and say, is that reasonable? How can it be reasonable if the RFP says something that contradicts the alleged problem with the proposal? Sorry, I'm having difficulty enunciating that under the protective order. Finally, with respect to the administrative record, I'll just make one comment. The administrative record should constitute what goes to the GAO if the court is going to evaluate the GAO's decision. That information also goes to the agency. So what is before the agency? It's particularly in a case that involves multiple instances of corrective action. That means the agency officials get that whole record back. It's all before them. I don't see why someone in the agency can pick and choose what goes to the GAO. I'm not talking about arguments. I'm talking about factual information. In terms of the declaration, the declaration was never challenged throughout all these proceedings until the appeal and all of a sudden it shouldn't be allowed in the administrative record. Yes, it was challenged at the Court of Federal Claims. But still, it's a declaration. That's the kind of things you present at the Government Accountability Office. Thank you, Your Honor. Thank you, Mr. Gordon. It's basically taken under advisory. Next case is Ronald Pinter versus the Secretary of Veterans Affairs, 2009-7038. Welcome back, Mr. Carpenter. Thank you very much, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Ronald Pinter. Mr. Pinter appeals a decision from the United States Court of Appeals for Veterans Claims dealing with what we believe was the lower court's reliance upon a misinterpretation of the assessment of evidence under 3.304F. Could you, I'm having a, just so you can make sure you cover what I'm saying, I'm looking at 3.304F, at least the portion of that that you cite in your brief. Could you direct me to exactly what you're saying was, what portion of this was misinterpreted and how? Yes, well actually it was expanded upon, Your Honor. It was expanded to include the question of the sufficiency of the stressor. In examination, in the consideration of the plain language of the regulation, there are three things that are required. A diagnosis in accordance with 4.125, which is basically a DSM or Diagnostic and Statistical Manual diagnosis, a linkage between that diagnosis and what happened in service, and a confirmed stressor. In this case, what the court below did was to rely upon a misinterpretation that was relied upon by the Board, which allowed the Board to consider questions of the sufficiency of the stressor, which really slops over onto two of those three prongs and adds to those prongs, or provisions, elements that are simply not part of the plain language of the regulation. Well, the regulation does, at least with respect to the third phrase, and I understand that you're saying it applies to more than one part, it says credible supporting evidence that the claimed in-service stressor occurred. That's right. So some credible supporting evidence, a determination on whether or not it was credible supporting evidence, is in order. Correct? Only in terms of establishing whether the event occurred. And in this case, the event which is alleged to be the underlying stressor for Mr. Pinter's diagnosis of post-traumatic stress disorder is the death of his sergeant, Sergeant Bell. And that event was confirmed. Excuse me, but I was going to jump in a little, and it seems to me that the stressor that Dr. Peck identified was something different. His stressor was built on factors not in the record, criminal activity and murder of Sergeant Bell, neither of which are part of the record, and therefore no stressor occurred. In other words, he wasn't saying that death itself was the stressor, he was saying the surrounding circumstances, none of which are in the record, and so no stressor occurred. Am I missing something there? And besides, all this is factual, and I'm wondering why we're even dealing with it. And that is frankly part of the point of the expansion of this to include the question of sufficiency of stressor, because when you interpose sufficiency of stressor into the credible supporting evidence of what happened, you're confusing element three, which is the confirmation of the event. Yeah, but the mere death, even Dr. Peck says, the mere death of Bell is not a stressor. He's got to say, well, the stressor is more. It's criminal activity and murder. No, Your Honor, with respect, under the DSM-3, a subjective reaction to an actual event which occurred is sufficient to support the diagnosis. The quibble, the attempt of both the VA and the court below to get into a question of whether or not the specifics of Sergeant Bell's death were sufficient is no longer relevant under the DSM criteria. So we have to start with element one, which is, is the diagnosis made in accordance with... What's the stressor? ...the death of Sergeant Bell? I thought even, then there's no evidence on that, because even Peck says that's not enough. No, but there is evidence in the record that confirms that Sergeant Bell died and that Sergeant Bell was in fact on the airplane. But it's not a stressor. Even, nobody will say that's a stressor. It's true that the sun came up that morning. That can be proven too, but that's not a stressor either. Your Honor, they changed the diagnostic criteria from objective to subjective. In the court below's decision in Cohen v. Brown, they explained the clinical difference between a diagnosis based upon an objective fact and a subjective reaction. There is no dispute that Sergeant Bell died or that Sergeant Bell was the sergeant for Mr. Pinter and the focus of his obsession for his psychiatric problem. The question is, his subjective reaction and the diagnosis made by this record is sufficient under DSM. It is made in accordance with 4.125. I don't understand your answer. You've got several medical, at least portions of several medical reports from different physicians, all of which, I haven't seen any of them say if he believed it. We're looking at his subjective reaction to what happened. We don't care. They seem to point to the fact that if these facts actually happened, not whether or not your client believed these happened, then these would support... I understand that, Your Honor, but that's the problem in this case. All of this medical evidence was accumulated in 1997. The change in the DSM took place around that time. This case lingered in the system from 1997 until the board decision... So you're saying the medical report... So your challenge is to the medical report. My challenge is to the way in which 3.304 was applied by the board in which they could rely upon the dispute in the record about the sufficiency of the stressor. The stressor requirements under the change in the diagnostic criteria from objective to subjective was not considered by the board because they were relying upon the former standard. The correct standard under this regulation is a diagnosis in accordance with 4.125, and 4.125 sends you back to the Diagnostic and Statistical Manual. The problem here is that the board and the court below got involved in medical issues, and those medical issues should have been resolved by medical experts, not by laypersons. By the requirements of their own regulation, they are supposed to resolve that based upon the diagnostic criteria in the Diagnostic and Statistical Manual. Under that diagnostic criteria, his subjective reaction is sufficient. We're not here to argue the facts. What's the stressor? The stressor is the death of Sergeant Bell. And nobody says that is a stressor. Because... You're the only person that... The only stressor was the death of Bell. No, no, Your Honor. Not the criminal activity, not the murder allegations, not all the drug dealing stuff. Just when was there ever a claim, my sergeant died and from that minute I lost it. With respect, Your Honor, you're attempting to do precisely what the board did. No, I'm just using your allegation that all they have to do is show that stressor occurred... The VA under 4.125 adopted the change in the Diagnostic and Statistical Manual. That's what's discussed at length in the Cohen case. And in the Cohen case below, they describe this whole subjective analysis. My client was entitled to the benefit of the regulation as written, not the benefit of the regulation as applied by the board using a standard that is no longer appropriate. And the fact that this evidence may not be sufficient is not the issue here. The issue here is whether or not when the court affirmed the decision below, were they relying upon a misinterpretation... Do you make the argument in your brief that they were relying on the wrong version? That they misinterpreted that based upon the definition that appears in 4.125? Yes, Your Honor. I do think you argued about misinterpretation. I don't ever get the point they relied on the wrong version. Well, I may not frankly have explicitly said that, Your Honor, but that is implicit in the citation to the court decision below in Cohen. That's what this entire case is premised about, precisely the question that you focused in on, which is, is the death alone sufficient? And this record answers that by saying that they can rely on this sufficiency question. And that simply is not consistent with what the regulation requires. The regulation requires a diagnosis in accordance with 4.125, and all of the medical evidence at issue here is created in 1997. I see that I'm into my rebuttal time. There's no further questions. We will save it for you, Mr. Toppinger. Please have a seat. Is the death alone the stressor? No, Your Honor. Based upon the medical opinions in this case and the board's evaluation of those medical opinions, the board determined that the stressor was the death of Sergeant Bell plus the surrounding circumstances, the death presumably because of information he knew in these covert CIA operations. That is the stressor in this case. Mr. Pinter's argument is basically a factual argument over which this court lacks jurisdiction because it has to do with the nature of the stressor, and the board found the stressor to be the death plus all of these additional circumstances for which there was no corroborating evidence. Mr. Pinter is here arguing that the nature of the stressor is simply the death alone, which we agree has been corroborated. So that's an argument over which this court lacks jurisdiction. He seems to be raising for the first time here another argument concerning the board not considering the new version of the regulation. That's not something that he's raised before and therefore should be waived, but even if this court were to consider that argument, that argument concerns the medical evidence, the nature of the medical evidence. The medical reports themselves are what say that the stressor is something more than the death. It's not the board saying what the stressor is. The board simply looked at those medical opinions and found that those opinions were based upon a stressor, which was the death and the surrounding circumstances. And Mr. Pinter also argues in terms of interpretation that there's nothing in 3.304F that requires a look at the sufficiency of the evidence, but that's plainly not the case. If you look at the first element of 3.304F, it requires medical evidence diagnosing the condition in accordance with 4.125. As Mr. Carpenter indicated, 4.125 requires a diagnosis that conforms to the DSM-IV. In the Cohen case, the Veterans Court explained that the criteria in the DSM-IV essentially are sufficiency of the stressor criteria, and in fact VA explained that when it revised 3.304F in 1999. VA explained that the 4.125A criteria in DSM-IV go to the sufficiency of the stressor, so that part certainly allows consideration of the sufficiency. Also, the second part of 3.304F, which is a link established by medical evidence between the current symptoms and the in-service stressor, clearly there has to be a link between the stressor and the diagnosis of PTSD means that the stressor has to have been sufficient to have caused PTSD. So that part, too, requires an evaluation of the sufficiency of the stressor. All the Board did was look at the medical opinions, which found that the stressor, which was Sergeant Bell's death plus the surrounding circumstances was sufficient, that there was no evidence from the medical reports that Sergeant Bell's death alone was sufficient. That finding was consistent with the statute. Even if you accept Mr. Pinter's argument that the third prong, the claimed in-service stressor, that that part doesn't necessarily involve an evaluation of the sufficiency of the stressor, the other parts certainly do. So even if he were able to meet the third prong by showing that Sergeant Bell died alone, he could not meet the first or second prongs and would not be entitled to service connection. For these reasons, we request that this Court affirm the decision of the Veterans' Court. Thank you. Thank you, Ms. Havaseed. Mr. Koppner has a little time. Thank you very much. Your Honors, it's not a question of the new version of the regulation. It's a question of what the regulation requires. The regulation requires a diagnosis in conformance with... She says even if you don't make three, you still have to have the link between the stressor and the symptoms. And I believe that Dr. Peck's opinion at least provides a link to that when you factor out this question of sufficiency. At page 54 of the record, Dr. Peck specifically says that Mr. Pinter experienced a sufficient stressor involving the death of Sergeant Bell to warrant a diagnosis of PTSD. So he does say a sufficient stressor based upon the death. And the question here is the criteria under DSM-IV and not the criteria under objective verification of the specific details surrounding the event. After all, Your Honors, we're dealing here with a psychiatric disability. We're dealing here with somebody's distorted perception of reality. What Sergeant Bell was or was not involved with is a part of what's going on in Mr. Pinter's head. We have a medical professional that says the stressor of his death was sufficient from Dr. Peck at page 54 in his final conclusion. But we have the board. Of course, we have a variety of other psychiatrists who reach a different medical conclusion. Yes, they do. And the board sides with them. Isn't this really, as she said, a question of weighing the evidence? No, Your Honor. Because compensation for post-traumatic stress disorder is unique amongst disabilities in the VA system. There is no other specific regulation tied to a specific condition. The conditions here are threefold under the plain language of the regulation. A diagnosis, a linkage, and a confirmed stressor. The government got up and conceded that there is no dispute about the event of Sergeant Bell's death. That confirmed stressor is the basis for the diagnosis, and Dr. Peck links that to the death which occurred during his period of service. That should be sufficient as a matter of law under the correct interpretation of this regulation. Thank you very much. Appreciate you. Thank you, Mr. Cavanaugh. The case should be submitted. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock.